UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN FORBES,

    Plaintiff,

v.

                              Case No. 1:04-cv-349

STEELCASE INC. SHORT TERM
DISABILITY BENEFITS PLAN,

                              HON. DAVID W. McKEAGUE[1]

    Defendant.
_____/

## OPINION

This is an action under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* brought by plaintiff Dawn Forbes for recovery of Short Term Disability ("STD") Benefits wrongfully denied by defendant, Steelcase Inc. STD Benefits Plan. This matter is before the Court on cross-motions for judgment based on the administrative record ("record"). Having duly considered the record, the parties' briefs and the arguments raised at the hearing on the parties' motions, the Court concludes, for the following reasons, that defendant's decision to deny STD benefits must be upheld.

### I. FACTUAL BACKGROUND

Plaintiff Dawn Forbes was employed by defendant Steelcase, Inc. as a Criterior Upright Press Operator from November 4, 1997 until December 13, 2001. In December 2001, her employment was involuntarily terminated due to economic downsizing. Plaintiff was diagnosed with Retinitis Pigmentosa in 1982 at the age of seventeen, and suffered from the disease on the day she was hired.

---

[1] Hon. David W. McKeague, United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

Retinitis Pigmentosa is an inherited disease that progressively worsens over time as the visual fields are constricted. Defendant was aware that plaintiff suffered from Retinitis Pigmentosa due to a medical letter of reference plaintiff provided from Dr. Robert Walt, O.D. Steelcase installed extra lighting in plaintiff's work area to accommodate her medical condition. As of December 13, 2001 when plaintiff's employment was terminated, plaintiff's supervisor considered her to be one of his best employees.

Dr. Walt examined plaintiff on December 24, 2001 after her termination. Dr. Walt's statement, dated January 3, 2003, stated that as of plaintiff's last examination on December 24, 2001, her best corrected visual acuity was 20/200 in both eyes, and her peripheral vision was restricted to the central seven degrees in both eyes. Dr. Walt indicated that any jobs plaintiff performed should have neither a high degree of visual demand nor the need for good peripheral vision. He also stated that plaintiff would not need to be absent from work for additional treatment. On January 23, 2002 plaintiff was examined by Dr. Roosenberg who concluded that plaintiff suffered from Retinitis Pigmentosa, which he characterized as a progressive and permanent condition that will inevitably result in the classification of plaintiff as legally blind. On January 25, 2002, further testing by Dr. Roosenberg revealed blurry vision and areas of 20/400 vision in both eyes.

Plaintiff submitted her claim for STD benefits under the STD Plan on February 3, 2002 along with the statements from Dr. Roosenberg and Dr. Walt. Plaintiff also submitted a medical report from Dr. Phillips, dated January 23, 2002, in support of her application for STD benefits. Dr. Phillips diagnosed plaintiff with Retinitis Pigmentosa and noted that plaintiff believed she was no longer capable of working. The Social Security Administration found Mrs. Forbes to be disabled on January 23, 2002.

> The governing policy, as it relates to STD benefits, states as follows:
>
>> In order for STD to be considered, an employee must, for medical reasons, be unable to perform the duties of her employment. That is, she cannot carry on the usual duties of her regular job or of any other suitable jot that meets her restrictions if a job is available. The loss of a professional or occupational license or certification does not, by itself, mean you are disabled.

After receiving plaintiff's claim for STD benefits, defendant delegated claims administration responsibilities to Liberty Mutual Insurance Company ("Liberty Mutual"). On February 11, 2002, Liberty Mutual notified plaintiff that her claim was denied. According to Liberty Mutual, the medical documentation submitted in support of plaintiff's claim failed to establish that plaintiff was disabled, as required by the STD Plan. Liberty Mutual advised plaintiff of her right to submit additional documentation to support her claim for benefits.

On March 4, 2002, in response to the denial of plaintiff's claim, Dr. Roosenberg wrote an additional letter to Liberty Mutual stating that he last examined plaintiff on January 25, 2002. He emphasized plaintiff's loss of peripheral vision, describing her range of view as tunnel vision, and expressing his certainty that her restricted visual fields would categorically label her as legally blind. He also expressed his concern that plaintiff's restricted field of vision would result in potential workplace hazards.

On March 19, 2002, Liberty Mutual again denied plaintiff's claim for benefits stating that Dr. Roosenberg's letter did not indicate a significant change in her condition that would disable her from performing her duties as a stand-up press operator. Liberty Mutual again offered plaintiff the option of submitting additional documentation to support her claim.

On April 12, 2002, plaintiff's attorney wrote to Liberty Mutual requesting a review of the

denial, as well as a copy of the STD Plan and a job-description of plaintiff's position as a stand-up press operator. On October 30, 2002, Liberty Mutual provided plaintiff's attorney with the requested information. On December 9, 2002, plaintiff's attorney sent a letter to Liberty Mutual acknowledging his receipt of the requested information and arguing that the denial should be reversed. Liberty Mutual turned plaintiff's appeal over to Steelcase's Benefits Review Committee which unanimously denied plaintiff's appeal on June 18, 2003.

On March 17, 2004 plaintiff's attorney sent a letter to Liberty Mutual with numerous exhibits requesting that Liberty Mutual and Steelcase reevaluate the decision to deny plaintiff's claim. Liberty Mutual contends that none of the information included in this correspondence, including plaintiff's medical records, supports plaintiff's claim that she was disabled from her employment on December 13, 2001. This action followed.

## II. STANDARD OF REVIEW

Defendant's decision to deny benefits must be upheld unless it was arbitrary or capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); *McDonald v. Western-Southern Life Ins. Co.,* 347 F. 3d 161, 168 (6th Cir. 2003). Under this deferential "arbitrary and capricious" standard of review, defendant's decision will be upheld if it is rational in light of the policy's provisions. *Id.* "Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (quoting *Williams v. Int'l Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000). Yet, "deferential review is not no review." *McDonald,* 347 F.3d at 172 (quoting *Hess v. Hartford Life & Accident Ins. Co.,* 274 F.3d 456, 461 (7th Cir. 2001)). The Court is not obliged to "rubber stamp" defendant's decision no matter how obscure or untrustworthy its reasoning. *Id.*

4

Plaintiff urges the Court to recognize that defendant's handling of the claim may have been influenced by a conflict of interest. Because defendant both determines eligibility for benefits and is responsible for paying benefits, plaintiff contends that defendant's decision should be subject to closer scrutiny. A potential conflict does not alter the standard of review, but it can be considered a factor in determining whether defendant's decision was arbitrary or capricious. *Darland v. Fortis Benefits Ins. Co.,* 317 F.3d 516, 527-28 (6th Cir. 2003), *overruled on other grounds, Black and Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003); *Borda v. Hardy, Lewis, Pollard & Paige, P.C.,* 138 F.3d 1062, 1069 (6th Cir. 1998).[2]

### III. ANALYSIS

### A. Defendant Did Not Fail To Provide Full And Fair Review.

Plaintiff argues that Steelcase failed to provide full and fair review of her claim in violation of ERISA. Plaintiff argues that defendant did not comply with 29 C.F.R. § 2560.503-1, which governs claims procedures under ERISA. Specifically, plaintiff argues that defendant failed to: (1) consult with a health care professional who has appropriate training in the field of medicine involved in the medical judgment; (2) provide for the identification of medical or vocational expert advice that was obtained on behalf of the Plan in connection with plaintiff's adverse benefits determination; and (3) engage a qualified health care professional during the appeal stage of this matter. Further,

---

[2] In this case, plaintiff asks the Court to consider defendant's conflict of interest, as defendant stands to gain financially by not paying claims. However, plaintiff provides no basis for this assertion or analysis of this argument. There must be support in the record that the potential conflict of interest actually affected the decision. *See Perruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998). Here, the Court has found no support for the proposition that defendant's decision to deny plaintiff STD benefits was in any way motivated by cost. Accordingly, the Court will reject plaintiff's conflict of interest argument.

plaintiff argues that it is not enough that a "Committee" determined that plaintiff does not meet the Plan's definition of disability and that the testimony of plaintiff's medical experts establishes that plaintiff meets such definition.

Defendant responds that after plaintiff submitted her application for benefits, she was invited on two separate occasions to submit supplemental information showing that she was disabled as of the time of her layoff on December 13, 2001. Even after the review process was completed and the record was closed, defendant reviewed a complete copy of plaintiff's medical records, which failed to establish that plaintiff was disabled as of December 13, 2001.

Defendant complied with the claims regulations codified in C.F.R. § 2560.503-1. Specifically, defendant allowed plaintiff to submit written documentation related to her claim for benefits, provided plaintiff with access to documents relevant to plaintiff's claim and took into account the information submitted by plaintiff, without regard to whether the information was considered in the initial benefit determination. *See* 29 C.F.R. § 2560.503-1(h)(2)(ii)-(iv). Furthermore, defendant's decision to deny plaintiff's claim for STD benefits was not based upon a medical judgment, but was instead based on the absence of any evidence to support plaintiff's disability claim as of December 13, 2001. Therefore, defendant was not required to consult with a health care professional or to identify medical experts whose advice was obtained on behalf of the plan in connection with plaintiff's adverse benefit determination. *See id.*

The record undoubtedly supports a finding that plaintiff suffered from a serious and degenerative medical condition affecting her eyesight and that she was an exceptional employee. Plaintiff's supervisor even wanted plaintiff back on the job after she was laid off. However, the change that caused plaintiff to stop working was not a medical condition, but an economic downturn

that caused defendant to layoff workers. Defendant did not fail to provide for a full and fair review of plaintiff's claim. Instead, defendant repeatedly gave plaintiff the opportunity to submit additional information in support of her claim and plaintiff failed to produce evidence that showed she was disabled as of the time her employment was terminated. Plaintiff has not shown defendant's decision to be erroneous, much less arbitrary or capricious.

### B. Plaintiff's Reliance on the Treating Physician Rule is Misplaced.

Plaintiff argues that defendant failed to give proper weight to the opinions of plaintiff's treating physicians. Plaintiff relies on *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516 (6th Cir. 2003) in support of her argument. However, after the Supreme Court's decision in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830, 123 S. Ct. 1965, 1970, 155 L. Ed. 2d 1034 (2003), ERISA does not require a plan administrator to accord special deference to the opinion of treating physicians. *See Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 294 (6th Cir. 2005) (treating physician rule followed in *Darland* no longer applies in ERISA context); *Hurse v. Hartford Life & Accident Ins. Co.*, 2003 WL 22233532 (6th Cir. Sept. 26, 2003) (holding that plaintiff's claim that administrator's decision denying benefits was arbitrary and capricious because the administrator did not follow the treating physician rule was without merit after *Black & Decker*).

Furthermore, even if the treating physician rule did apply in this case, plaintiff's treating physicians failed to opine that plaintiff was disabled from her employment on December 13, 2001, as the term is defined in the STD plan. Even according some deference to plaintiff's treating physicians' opinions, such opinions do not support the conclusion that plaintiff could not perform her job duties on December 13, 2001 as required by the STD Plan. Therefore, because the treating physician rule does not apply in this case, and further, because plaintiff's treating physicians have

not shown or even opined that plaintiff was disabled as of December 13, 2001, the Court finds that defendant did not act arbitrarily or capriciously by not following the treating physician rule.

**C. The Record Does Not Support Plaintiff's Claim That She Was Working While Disabled.**

Plaintiff next argues that the fact that she continued to work, until December 13, 2001, when she was laid off, does not preclude a finding that she was disabled. Plaintiff cites *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003) in support of her claim. In *Hawkins*, the claimant suffered from fibromyalgia from 1993 until 2000, when he stopped working due to his disability. The Seventh Circuit noted that the fact that an employee worked during a period when the employee claimed to have been disabled did not necessarily require the conclusion that the employee was not disabled. The court recognized that the employee "may have forced himself to continue in his job for years despite severe pain and fatigue and finally found it too much and given it up even though his condition had not worsened." *Id.*

While plaintiff's argument may be true, in this case, the record contains no evidence in support of plaintiff's claim that she was disabled from performing the duties of her employment on December 13, 2001. Unlike *Hawkins*, 326, F.3d at 918, the record does not support a conclusion that plaintiff was working on the date of her layoff "despite an illness that everyone agreed was totally disabling." Instead, as defendant notes, the record indicates that plaintiff was performing her job duties well and without complaint. The record does not support a finding that on December 13, 2001, plaintiff finally found her condition too hard to bear and gave up her job "even though the condition had not worsened." *Id*; *see Ciulla v. Usable Life*, 864 F. Supp. 883 (W.D. Ark. 1994) (upholding denial of benefits where evidence showed that plaintiff was able to perform his duties and continued to do so until terminated). Therefore, the Court finds that the record does not support

plaintiff's claim that she was working under a condition that was totally disabling and finally stopped working after she found it too hard to bear.

## IV. CONCLUSION

Having reviewed the entire record under the deferential standard of review that governs this matter, the Court cannot find error in defendant's decision to deny plaintiff's application for STD benefits. The case presents the Court with an unfortunate set of circumstances, where one can attach little blame to either side for their respective actions. Plaintiff wanted to work productively even with her visual limitations. Steelcase made accommodations for plaintiff, provided plaintiff with a job for some time and reaped the benefit of having an employee who was considered exceptional by her supervisor until economic conditions forced plaintiff's termination. Nonetheless, the fact that plaintiff presents a sympathetic case for awarding benefits does not entitle her to the relief requested. Under *Calvert*, 409 F.3d at 294, defendant was not required to give any special deference to plaintiff's treating physicians. No significant evidence was overlooked or not appreciated that shows plaintiff was unable to perform the duties of her employment at the time her employment was terminated. The Court cannot find any evidence in the record to support plaintiff's claim that she was disabled under the STD benefits plan as of December 13, 2001, and that defendant acted arbitrarily and capriciously in denying plaintiff STD benefits. Accordingly, plaintiff's claim for recovery of STD benefits must be denied and judgment will be awarded in favor of defendant.

An order consistent with this Opinion shall issue forthwith.

Dated: July 28 , 2005           /s/ David W. McKeague           
                                 DAVID W. McKEAGUE
                                 UNITED STATES CIRCUIT JUDGE

9